The action is brought against the defendant as surviving partner of the firm of Braswell Cherry, and the plaintiffs declared: First, upon a special contract to pay plaintiffs for carrying the mail, as set forth in the evidence, from 1 July, 1856, to 1 October, 1856, and also in the common counts for work and labor done. Braswell Cherry obtained a contract from the general government to carry the mails from Washington to Wilson via Greenville for the four years commencing 1 July, 1855, and ending 1 July, 1859, and they were, by terms of the contract, to carry them from Washington to Greenville by steamboat.
Plaintiffs owned a steamboat running between these points, (145) and they contracted with Braswell Cherry to carry the mails, each way six times a week for four years, commencing 1 July, 1855, for the sum of $1,250, to be paid quarterly. Plaintiffs complied with the contract up to 1 October, 1856, and Braswell Cherry paid up regularly each quarter for the first four quarters, but refused to pay for the fifth. Braswell died in May, 1856.
The defendant then introduced J. J. B. Pender, who testified that on 1 July, 1856, he bought of Cherry, surviving partner of Braswell Cherry, all the horses, coaches, etc., belonging to the mail line from Washington to Wilson, and gave Cherry a bond to faithfully execute the contract with the general government; that he wrote to the plaintiffs stating the purchase, and proposing to continue the contract; that plaintiffs sent him word that they would be up and see him; that he wrote to the plaintiffs several letters and received answers, one of which letters, was as follows:
"GREENVILLE, 1 July, 1856.
"Mr. John Myers — Dear Sir: Yours of the 2d instant is received; in reply, I wish you to continue carrying the mails as heretofore, until I see you, which will be soon as I can get my business arranged here, and in the meantime, please inform me whether or not you will do so. Direct yours to this place. Yours respectfully,
"JOS. JNO. PENDER." *Page 112 
The witness further swore, that between 8 and 15 July, one of the plaintiffs, R. L. Myers, came to Tarboro, the residence of the witness, and submitted to him a contract in writing to carry the mail for the balance of the four years; that he refused to bind himself for any particular time, but told Myers to go on as they had been doing; that he seemed to get angry, and told him that he should go to Washington City, and oppose the transfer of the contract to him, Pender, and immediately left; that at the time of the payment for the quarter, he went to plaintiffs and offered to pay, but did not, because they (146) would not give him a receipt in his own name, and insisted on his receiving a paper which he did not like. The plaintiffs' counsel then showed the witness a receipt, in words and figures following, viz.:
"Received, Washington, D.C., 8 October, 1856, of Mr. T. R. Cherry, surviving partner of Braswell Cherry, by the hands of J. J. B. Pender, three hundred and twelve dollars and 59 cents in full for mail service by steamboat `Governor Morehead,' for one quarter, ending 30 September, 1856, $312.59. JOHN MYERS SON."
And asked him if the plaintiffs did not offer to accept the money and give him that receipt? Witness answered, that they offered to receive the money and to give him a paper, perhaps that, but that he could not identify it. Thomas Myers testified that the receipt produced was the paper offered; that he was present at the time it was offered, made a memorandum on it and preserved it.
The defendant's counsel objected to the production of the receipt, to the questions about it, and to its being read to the jury, but the court overruled the objection. Defendant's counsel excepted.
Verdict and judgment for plaintiffs. Appeal by defendant.
Upon the trial before the jury in the Superior Court, the case was made by the parties to turn upon the inquiry, whether J. J. B. Pender had been substituted for defendant in his contract with the plaintiffs, and, consequently, whether Pender was the debtor instead of defendant. To establish the affirmative of this inquiry, the defendant introduced Pender, who in the course of his testimony stated that he had offered to pay the quarter's dues, for which this action is brought, but he had not paid it, because plaintiffs were unwilling to give him such a receipt as he wished.
Upon the cross-examination, the receipt was produced and (147) identified as the one in question. The defendant objected to its *Page 113 
introduction, and the overruling of this objection is the ground for the single exception which appears upon the record.
The evidence is clearly admissible. The defendant attempted to show that Pender was accepted as the debtor, by showing that the plaintiffs negotiated with him. It was surely competent for plaintiffs to show in reply, in what capacity they treated with him. The receipt was competent for that purpose, as the declaration made at the time, and constituting a part of the res gestae, and is also competent as the best evidence of a matter which the defendant had attempted to prove, viz., the purport of the receipt. In either point of view, the evidence was admissible, and there is no ground for the exception.
PER CURIAM. Affirmed.